# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 08 CR 746-11 |
| Plaintiff, ) | |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| JOSE GUZMAN, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Charles R. Norgle, District Judge

Before the court is Defendant Jose Guzman's Motion for Judgment of Acquittal and Motion for a New Trial ("Guzman Motion"). For the following reasons, the motions are denied.

## I. BACKGROUND

On April 6, 2011, a jury convicted Jose Guzman ("Guzman") of racketeering conspiracy, 18 U.S.C. § 1962(d), and drug conspiracy involving at least 500 grams but less than 5 kilograms of cocaine mixture, 21 U.S.C. § 841(a)(1). Guzman was tried with three other defendants in a joint trial in which all defendants were found guilty of all counts. The counts stemmed from the activities of the Latin Kings street gang in the Chicago area. Guzman was allegedly a "regional enforcer" for the gang's 26th Street region, and his role involved directing other members in activities to further the gang's interests. Over five weeks, the government presented the jury with evidence including approximately seventy tape and video recordings; cooperating gang members who testified for the government against Guzman; the gang's written constitution and the

chapter's local gang rules; cocaine and firearms seized by law enforcement; and testimony by government agents. The jury was empaneled anonymously, and their verdict form remains sealed. Guzman now moves this court under Rule 29 for a judgment of acquittal and under Rule 33 for a new trial.

## II. DISCUSSION

### A. Standards of Review

In attacking the sufficiency of the evidence in a Rule 29 motion for judgment of acquittal after a guilty verdict, a defendant "faces a nearly insurmountable hurdle." United States v. Howard, 619 F.3d 723, 726 (7th Cir. 2010) (quoting United States v. Morris, 576 F.3d 661, 665-66 (7th Cir. 2009)); see also United States v. Warren, 593 F.3d 540, 546 (7th Cir. 2010) ("a heavy, indeed, nearly insurmountable, burden"); United States v. Blanchard, 542 F.3d 1133, 1154 (7th Cir. 2008) ("daunting task"). The deference owed jury verdicts means successful challenges are rare. Howard, 619 F.3d at 726 (quoting United States v. Melendez, 401 F.3d 851, 854 (7th Cir. 2005)). In considering the challenge, the court views the evidence "in the light most favorable to the government and will uphold the jury's verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting United States v. Garcia, 580 F.3d 528, 534 (7th Cir. 2009)). The court does not "weigh the evidence or assess the credibility of witnesses." Id. (quoting United States v. Khattab, 536 F.3d 765, 769 (7th Cir. 2008)); see also Blanchard, 542 F.3d at 1154 (courts defer to the jury's credibility determinations).

Rule 33, in contrast, provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The standard for a

Rule 33 motion for a new trial is different than a Rule 29 judgment of acquittal. The "task is to determine whether the verdict is so contrary to the weight of evidence that a new trial is required." United States v. Chambers, 642 F.3d 588, 592 (7th Cir. 2011) (citing United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999)). "A defendant is [also] entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006) (citing United States v. Berry, 92 F.3d 597, 600 (7th Cir. 1996)). The court does not view the evidence in a light most favorable to the government, but instead makes its own assessment. See Washington, 184 F.3d at 657; see also Tibbs v. Florida, 457 U.S. 31, 38 n.11 (1982). Granting a Rule 33 motion is nevertheless disfavored except in "the most extreme cases." United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998) (quotations omitted). The court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989). The court may only order a new trial if "the verdict is against the manifest weight of the evidence" and would result in a "miscarriage of justice." Washington, 184 F.3d at 657-58.

**B. Motion for Judgment of Acquittal**

Guzman argues that the government did not prove all elements of the two charges on which the jury convicted. Specifically, "the Government failed to prove that Defendant Guzman was involved in an enterprise as defined by the relevant statutes or that he was involved in a conspiracy which committed two predicate acts for the purposes of the RICO statute." Guzman Mot. 6-7. The government disagrees. The court takes each charge in turn.

3

### 1. Racketeering Conspiracy: Enterprise

Guzman argues that the government failed to prove that an enterprise existed, or if it did, that Guzman participated in it. Guzman contends the government offered tattoo evidence insufficient to allow a jury to find he was a member of the Latin Kings. Specifically, although Guzman had a lion tattoo like other Latin Kings members, Guzman's lion tattoo had marked differences. These differences, Guzman argues, should not allow a jury to find he was a member of a gang whose members constituted a RICO enterprise. "A lion without more, however, does not denote Latin King membership." Guzman Mot. 10. Guzman argues that the government presented "little to no other evidence" of Guzman's participation in the enterprise.

As an initial matter, the court observes that Guzman's inferences about a "lion without more," even if reasonable, do not overcome the jury's inferences regarding tattoo evidence, which in this case was properly admitted. Further, the government points out that jurors heard other evidence of Guzman's role with the Latin Kings, including from a former high-ranking Latin Kings gang member cooperating with the government. This cooperator, Milton Shanna ("Shanna"), testified that Guzman was a 26th Street region enforcer for the Latin Kings. Jurors heard Guzman on undercover tape recordings discussing gang affairs, including drugs, rival gang shootings, and internal gang violence. Jurors also heard a government agent testify that Guzman made a post-arrest statement in which he offered a detailed confession.

Guzman raises no concerns or arguments other than those offered at trial. The jury heard ample evidence of Guzman's membership in the Latin Kings, the activities of the Latin Kings as a RICO enterprise, and Guzman's role in helping to bring those

4

activities about. Guzman does not come close to clearing the high bar to set aside a jury verdict. Viewing the evidence in a light favorable to the government, it is clear that a rational trier of fact could have found Guzman guilty of these elements of the crime beyond a reasonable doubt. See Howard, 619 F.3d at 726.

## 2. Racketeering Conspiracy: Predicate Acts

Guzman argues that at trial the government presented evidence of only one illegal act—a drug transaction involving cocaine. To be guilty under the RICO statute an individual must commit two "predicate acts." 18 U.S.C. § 1961(5). Guzman, relying on his earlier conclusion that the government failed to prove he was part of an enterprise, thus concludes the government has shown no other RICO activity by Guzman. The court has found, however, that the government's evidence would allow a rational trier of fact to find Guzman to be part of the gang whose members comprised the enterprise beyond a reasonable doubt. The government's evidence of Guzman's conspiracy with other members of the enterprise to commit additional "predicate acts" listed in the RICO statute included multiple illegal drug transactions and instructions to carry out a murder. The court finds this evidence would allow a rational trier of fact to find Guzman committed two predicate acts beyond a reasonable doubt.

Guzman also argues that much of the government's evidence derived from paid informants. Many were former (or perhaps current) Latin Kings gang members. These informants were not only paid for their work, some were also offered reduced sentences for their crimes if they cooperated. "That certainly provides incentive to lie," Guzman contends. Reply to Government's Consolidated Resp. to Defs.' Mots. For New Trial And For Acquittal 2 ("Guzman Reply"). Guzman argues that Shanna's testimony implicating

Guzman in the conspiracy was deficient because Shanna had engaged in serious acts of violence in the past, never told his government handlers about it until well after his cooperation was underway, and generally "made a habit out of lying." Id.

Guzman's argument is misplaced. Shanna's testimony was not so baseless as to confuse the jury. In any case it is for the jury, not for Guzman or for the court, to make credibility determinations and weigh evidence in an analysis of a Rule 29 motion for acquittal notwithstanding the verdict. Counsel for Guzman and other defendants at trial exposed the worrisome details Guzman raises here. The jury was well aware of Shanna's past behavior. The jury was instructed by the court to take the credibility of witnesses into account in its deliberations. Absent evidence to the contrary, and there is none, the court assumes the jury followed the court's instructions. See United States v. Mallet, 496 F.3d 798, 802 (7th Cir. 2007) (citing United States v. James, 487 F.3d 518, 525 (7th Cir. 2007)). The court finds that a rational trier of fact could have found Guzman guilty of all the essential elements of racketeering conspiracy beyond a reasonable doubt. See Howard, 619 F.3d at 726. Guzman's Rule 29 motion is denied.

## C. Motion for a New Trial

Guzman argues that he deserves a new trial under Rule 33 because errors at trial, individually and in sum, cost Guzman his right to a fair trail. Guzman points to three errors: the use of an anonymous jury, the denial of a motion for a mistrial, and the decision to allow gang tattoo evidence. The government disagrees. The court takes each allegation of error in turn. The court notes that under the Rule 33 standard the court views the evidence not in the light most favorable to the government but instead makes

its own assessment in considering whether in the interest of justice a new trial is warranted.

### 1. Anonymous Jury

Guzman argues the court erred in granting the government's motion to empanel an anonymous jury. Guzman recites operative case law, focusing on United States v. Mansoori, 304 F.3d 635 (7th Cir. 2002), and concludes that the defendants in this trial were not dangerous enough to warrant an anonymous jury. The government disagrees. Guzman makes no arguments that were not raised during briefing on the motion to empanel an anonymous jury. The court entered an opinion and order, United States v. Zambrano, 2011 WL 528926 (N.D. Ill. Feb. 4, 2011), explaining the reasoning for its decision to empanel an anonymous jury. Guzman does not directly disagree with the court's line of reasoning, only its conclusions. Instead Guzman broadly contends the five Mansoori factors are not sufficiently present to warrant an anonymous jury.

The court has reviewed Guzman's arguments and in responding would only recapitulate its February 4, 2011 opinion. This the court declines to do, except to note that it performed a thorough analysis pursuant to the factors in Mansoori. The court found that an anonymous jury was easily warranted in light of credible risks that jurors could face intimidation and develop undue concerns for their own safety because defendants were involved in organized, violent crime. See, e.g., United States v. Morales, No. 09-2863, 2011 WL 3625135, at *8-10 (7th Cir. Aug. 18, 2011) (affirming use of anonymous jury in trial of Insane Deuces, rivals of the Latin Kings). It was not error for the court to grant the government's motion for an anonymous jury.

## 2. Motion for Mistrial

Guzman argues that he deserves a new trial because of the possibility that the jury saw him and the three other defendants enter the courtroom escorted by U.S. Marshals through a wood-paneled door. The door leads to their holding cell, though the cell was out of view. Ordinarily parties are seated before the jury comes out. Because there was no prejudice whatsoever from this event, the court, after a hearing including video evidence, denied the defendants' motion for a mistrial. See United States v. Rutledge, 40 F.3d 879, 883 (7th Cir. 1994).

Guzman contends jurors were "easily able to observe multiple United States Marshals physically escorting" the defendants from the "courtroom lockup facility to their individual seats." Guzman Mot. 19. Guzman contends this dramatically altered jurors' perception of the defendants. The jurors "had no reason to think that the Defendants were not leaving through the front door of the courtroom to sleep in their own beds at night—innocent men yet to be proven guilty." Id. The fallout, according to Guzman, is that "the presumption of innocence so dearly held in our system of justice became irrevocably tainted." Id.

The court disagrees. Guzman fails to discuss the mistrial hearing, during which courtroom security footage was played, showing that jurors, even if they saw the defendants entering, could not see the cell, did not know the door led to a cell, saw the defendants in street clothes, which they wore throughout the trial, and did not see them being restrained by Marshals, who were dressed in suits that day and throughout the trial. Moreover, the door jurors may have seen the defendants emerge from is identical to three other courtroom doors—the attorneys' cloakroom and two doors to the chambers

hallway. The courtroom deputy, judge, jurors, and defendants all use the same kind of wood-paneled door, designed to blend into the paneling on the walls of the courtroom.

The court recognizes that "[c]entral to a defendant's Fourteenth Amendment right to a fair trial is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (quotations omitted). Some practices, such as forcing a defendant to wear prison clothing or shackles, are at odds with this principle. Estelle v. Williams, 425 U.S. 501, 503–04 (1976). This right, however, is not absolute. Allen, 397 U.S. at 343. Sometimes restrictive measures or noticeable security is needed. See Holbrook, 475 U.S. at 567–68.

Featuring the alleged leadership of one of the nation's most infamous criminal street gangs, Guzman's trial was heavy on security. There were usually two Marshals for every defendant in the courtroom. A separate metal detector with court security officers stood outside the courtroom door. But these measures were realistically subtle if not hidden—the Marshals wore suits and the metal detectors were completely out of jurors' view. With carefully veiled security measures over five weeks, on a single day jurors at most caught a fleeting, ambiguous glimpse of men in suits escorting the defendants to their seats next to their lawyers, also in suits. This is a far cry from jurors observing defendants in shackles and jumpsuits, which even then does not automatically signify prejudice. See United States v. Traeger, 289 F.3d 461, 472 (7th Cir. 2002) (juror saw defendant shackled and wearing a prison uniform); United States v. Jones, 696 F.2d 479,

492 (7th Cir. 1982) (juror saw defendant shackled to another defendant whose trial received major media publicity).

Guzman fails to make a colorable argument to suggest he suffered actual prejudice, see Traeger, 289 F.3d at 472, and the court found at trial, after a hearing where video evidence was presented, that no prejudice could have occurred. A defendant "bears the burden of showing affirmatively that he was prejudiced by inadvertent exposure to the juror." Id. Guzman, who takes factual liberties in characterizing the event, has not carried this burden. Guzman asserts that "we can only assume that the jury did see the defendants in shackles and there was some improper prejudice." Guzman Mot. 21. But nobody claims jurors actually saw the defendants in restraints. Guzman merely argues "the manner in which the United States Marshals routinely escort the Defendants from lockup to their individual tables is a physical restraint which suggests guilt." Id. at 20. Guzman does not argue the jurors in fact saw defendants in restraints. Nor did the video footage support such a finding. The court elected not to interrogate jurors about what they saw, as this would have served only to amplify a risk of prejudice. Even if jurors caught a brief glimpse of defendants in shackles, Traeger and Jones make clear that a mistrial is not required unless the defendant carries the burden of showing actual prejudice. Guzman does not do so. The court did not err in denying a mistrial.

### 3. Tatoo Evidence

Guzman's co-defendant, Augustin Zambrano, moved before trial to exclude evidence of gang tattoos, including photographs, on the ground that unfair prejudice from tattoos "far outweighs" probative value under Federal Rule of Evidence 403. Guzman adopted this motion. The government contends the tattoos were evidence showing that

10

the defendants charged in a RICO conspiracy were in fact members of the organization—the Latin Kings street gang—that ran the illegal enterprise.

Gang tattoos are not unfairly prejudicial and may be admissible in certain cases, particularly where a conspiracy among members of a gang is charged. United States v. Irvin, 87 F.3d 860, 864 (7th Cir. 1996); see also United States v. Sargent, 98 F.3d 325, 328 (7th Cir. 1996) ("[G]ang membership can be key to establishing criminal intent or agreement to conspire."); United States v. Thomas, 86 F.3d 647, 652 (7th Cir. 1996). Court still must carefully consider gang affiliation evidence to avoid undue prejudice. See United States v. Harris, 587 F.3d 861, 867 (7th Cir. 2009); United States v. Richmond, 222 F.3d 414, 417 (7th Cir. 2000). Tattoos are not admissible "when they are only admitted to show membership in a gang" apart from a conspiracy. United States v. Thomas, 312 F.3d 627, 631 (7th Cir. 2003). All four defendants here, including Guzman, were allegedly Latin Kings, as were more than two dozen others charged in the racketeering case. At trial, tattoo evidence demonstrated membership in a gang whose members composed a RICO conspiracy. For example, the government presented evidence of the gang's tattoo protocol, whereby ink signified rank and junior members took orders from their superiors to further the enterprise.

Furthermore, gang tattoos may be admissible when a relevant fact, such as membership, is contested. United States v. Lewis, 910 F.2d 1367, 1372 (7th Cir. 1990); Martinez v. City of Chi., No. 07-cv-422, 2009 WL 3462052, at *4-5 (N.D. Ill. Oct. 23, 2009). Guzman himself argued that his lion tattoo—which the government cast as a signature Latin Kings tattoo—showed that Guzman was not a gang member because his tattoo was different. Guzman's use of tattoo evidence to distance himself from the gang

suggests tattoo evidence was not only relevant and probative, but was also not unfairly prejudicial.

Guzman's chief argument on this point relies on his earlier conclusion that the government failed to prove he was part of the RICO enterprise. Tattoo evidence, therefore, would be improper under Rule 403, Guzman argues. But the government presented other evidence implicating Guzman as a member of the illegal enterprise, which defeats Guzman's argument on its own terms. Moreover, tattoo evidence would be proper in any event, since it is allowed to show membership in a gang when attempting to prove a charge of conspiracy involving the gang. See Irvin, 87 F.3d at 864; see also Sargent, 98 F.3d at 328; Thomas 86 F.3d at 652. The court did not err in allowing evidence of gang tattoos.

## III. CONCLUSION

Viewing the evidence in the light most favorable to the government, but without weighing the evidence or making credibility determinations, the court in its Rule 29 analysis finds that a rational juror could have found Guzman guilty on every element of both counts. Making its own assessment of the evidence, the court in its Rule 33 analysis finds that no trial error, alone or in the aggregate with other alleged errors, had a prejudicial effect on the jury's verdict. Nor was the verdict so against the weight of the evidence as to warrant a new trial for Guzman. For the foregoing reasons, Guzman's motions under Rule 29 and Rule 33 are denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9-29-11